UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAMMY LARA,

    Plaintiff,

v.                                              CASE NO. 3:16-cv-922-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff claims that she became disabled on December 22, 2008. (Tr. 4.) The first administrative law judge held a hearing on September 27, 2012 (Tr. 10-34), and subsequently issued a decision on October 26, 2012, finding Plaintiff not disabled. (Tr. 50-57.) On November 25, 2012, Plaintiff requested that the Appeals Council review her decision. (Tr. 181-85.) The Appeals Council rendered an unfavorable decision on April 4, 2014. (Tr. 1-7.)

Having exhausted her administrative remedies, Plaintiff then filed a civil action in the United States District Court for the Middle District of Florida, arguing that the ALJ failed to articulate good cause, supported by substantial evidence, to

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 8, 10.)

discount the medical opinions offered by Russell Sachs, M.D., Plaintiff's treating pain management physician. On January 27, 2015, Judge Toomey entered an order reversing the decision of the ALJ and remanding Plaintiff's claim for further proceedings. (Tr. 735-39.) Judge Toomey agreed with Plaintiff that the ALJ's reasons for discrediting Dr. Sachs's opinions – that the opinions were "retrospective" and not supported by the treatment notes, which showed essentially conservative treatment – were not supported by substantial evidence. (*Id.*) Specifically, Judge Toomey noted that Dr. Sachs treated Plaintiff extensively during the relevant period and the fact that Dr. Sachs rendered his opinions after such period did not support affording "little weight" to the opinions. (Tr. 737.) Judge Toomey also stated that the ALJ's second reason for discounting the opinions was vague and that the record supported more than "conservative treatment." (Tr. 738.) On remand, the ALJ was instructed to re-evaluate Dr. Sachs's opinions and, if discrediting such opinions, to articulate good cause supported by substantial evidence for doing so. (*Id.*)

Plaintiff was provided a new hearing in front of a second administrative law judge ("ALJ") and the hearing was held on July 28, 2015. (Tr. 675-709.) The ALJ rendered a decision on August 21, 2015, finding Plaintiff not disabled from December 22, 2008, the alleged onset date, through March 31, 2009, the date last insured.[2]

---

[2] Plaintiff had to establish disability on or before March 31, 2009, her date last insured, in order to be entitled to a period of disability and DIB.

Plaintiff is appealing the Commissioner's decision that she was not disabled from December 22, 2008 through March 31, 2009. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED AND REMANDED**.

I. **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues two general points on appeal. First, Plaintiff argues that the second ALJ also improperly rejected the opinions of her treating physician, Dr. Sachs. Plaintiff contends that the ALJ failed to articulate good cause for discounting his opinions. Second, Plaintiff argues that the ALJ erred by affording significant weight to the non-examining physician, Shakra Junejo, M.D. The Commissioner argues that the ALJ's evaluation of the medical opinions of record is clearly articulated and supported by substantial evidence.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

4

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d

834, 835 (11th Cir. 1985) (per curiam) (same).

Evidence from other sources, *e.g.*, not acceptable medical sources such as nurse-practitioners, may be used to show the severity of a claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d); SSR 06-03p. "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p.

> The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . . However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.

*Id.*; *see also Duncan v. Astrue*, No. 3:07-cv-751-J-HTS, 2008 WL 1925091, at *2 (M.D. Fla. Apr. 29, 2008) (citing SSR 06-03p); *Sloan v. Astrue*, 499 F.3d 883, 888-89 (8th Cir. 2007) (same).

### B. The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including disorders of the spine and hips. (Tr. 660.) The ALJ then found that Plaintiff did not have any

6

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 661.) At step four[3], the ALJ found, in relevant part, that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] cannot climb ladders, ropes and scaffolds. She is limited to simple, routine and repetitive tasks.

(*Id.*) The ALJ then determined that while Plaintiff was unable to perform her past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 666-67.) As such, the ALJ found that Plaintiff was not disabled during the relevant period. (Tr. 668.)

### C. Analysis

Plaintiff initially argues that the ALJ erred by improperly discounting the opinions of Dr. Sachs, Plaintiff's treating pain management doctor. Specifically, Plaintiff contends that the ALJ failed to articulate good cause for discounting the treating opinions.

On December 22, 2008, the alleged onset date, Plaintiff underwent an MRI of both hips. (Tr. 330-31.) The MRI revealed "[s]ignificant stage 3 or above

---

[3] A five-step sequential evaluation process has been established by the Social Security Administration in the Social Security Act, which is used to determine whether an individual is disabled or not (20 C.F.R. § 404.1520(a)).

avascular necrosis of the bilateral hips with collapse more evident on the left femoral head." (Tr. 331.) On December 29, 2008, treating physician Carlos Esquivia-Munoz, M.D., reported that Plaintiff had constant pain in both hips and had difficulty ambulating. (Tr. 427.) He opined that her prognosis was fair, her activity was limited and her disability was "partial, permanent." (*Id.*)

On January 12, 2009, Dr. Sachs evaluated Plaintiff for complaints of back and leg pain. (Tr. 424.) Dr. Sachs treated Plaintiff extensively throughout her alleged disability period and continuously thereafter for pain management. (Tr. 217-429, 465-68, 482-637, 737, 1105-70, 1175-77, 1191-1259.)

On January 8, 2012, Dr. Sachs prepared written correspondence on behalf of Plaintiff regarding her disability. (Tr. 465.) Dr. Sachs stated that he had been treating Plaintiff "for several years" for "chronic pain." (*Id.*) Dr. Sachs opined that she has been unable to perform work in any meaningful capacity since 2008 as she required frequent breaks from activity, and that she could not perform any lifting or carrying, or prolonged walking and standing due to incapacitating pain. (*Id.*)

On July 1, 2012, Dr. Sachs completed a Physical Residual Functional Capacity Questionnaire (the "RFCQ"), diagnosing Plaintiff with chronic pain, cervical disc disease, lumbar disc disease, avascular necrosis in hips, and major depression. (Tr. 635.) Dr. Sachs's prognosis for Plaintiff was "poor." (*Id.*) The

positive clinical findings which supported his diagnosis included antalgic gait, grimacing and positioning, and guarding due to pain. (*Id.*) Dr. Sachs opined that Plaintiff's pain or other symptoms would frequently interfere with her attention and concentration. (*Id.*) He further opined that Plaintiff could walk one to two city blocks without rest or severe pain, that Plaintiff could sit for thirty minutes at one time, could stand for twenty minutes at one time, could stand/walk for less than two hours in an eight-hour work day, and sit for two hours in an eight-hour work day. (Tr. 636.) Additionally, Dr. Sachs opined that Plaintiff would need rest every hour for fifteen minutes, that she could rarely lift ten pounds and never lift more weight, that she would have "good days and bad days," which would make her absent from work more than four times per month, and that she would be required to lie down two to three hours in an eight-hour work day. (Tr. 636-37.) Dr. Sachs stated that the symptoms and limitations applied as of January 1, 2009. (Tr. 637.)

The ALJ afforded "no significant weight" to the opinions of Dr. Sachs after remand and provided a host of reasons for discounting his opinions, apparently in the hopes of amassing the requisite "substantial evidence" to support the decision. (Tr. 665-66.) The problem is, however, that the reasons listed by the

9

ALJ still do not constitute substantial evidence justifying the rejection of Dr. Sachs's medical opinions.

First, the ALJ here made the same errors as the prior ALJ as noted by Judge Toomey in the prior remand order. For example, the ALJ here referenced the 2012 date of the opinions and restrictions rendered by Dr. Sachs to reject the credibility of such opinions. (Tr. 665 ("His opinions were provided more than three years after the claimant's date last insured."), 666 (explaining in a full paragraph how Dr. Sachs did not provide "contemporaneous restrictions that would support his retrospective assessment").) The undersigned agrees with Judge Toomey in that the fact that Dr. Sachs rendered his opinions and restrictions in 2012 is insufficient to reject Dr. Sachs's opinions. (Tr. 737-38.) Dr. Sachs extensively treated Plaintiff during the relevant period. Moreover, there is still no indication that Dr. Sachs had any reason to render an opinion or give Plaintiff restrictions prior to when he did.

The other reasons cited by the ALJ for discrediting the opinions of Dr. Sachs are likewise insufficient due to the ALJ's "cherry-picking" of evidence or the substitution of lay opinions for that of medical expertise. The ALJ stated that Dr. Sachs's opinions "are not well-supported by clinical findings," and "appear to be based on the claimant's subjective allegations" because: (1) his post-surgical treatment notes fail to indicate "incapacitating pain;" (2) his treatment note of January 2009 indicates that Plaintiff had an antalgic gait with pain behaviors such

10

as grimacing and shifting positions, but within twelve months of the alleged disability onset date the notes fail to indicate such descriptions of pain; (3) his treatment notes fail to indicate testing of Plaintiff's lifting, carrying, walking, or standing abilities; (4) his patient questionnaire indicates that Plaintiff was "often" able to lift a three-year old child and "could sometimes" walk one quarter of a mile; and (5) his notes indicate that Plaintiff completed physical therapy in September 2009.  (Tr. 665.)  However, while Dr. Sachs's treatment notes do not utilize the term "incapacitating pain," they consistently reflect that Plaintiff suffers with chronic intractable pain upon physical examination, which is not inconsistent with Dr. Sachs's opinions.[4]  (Tr. 217, 219, 223, 225, 228, 233, 239, 241, 244, 255, 258, 264, 267, 270, 274, 276, 278, 280, 283, 285, 287, 293, 295, 300, 302, 305, 318, 320, 326, 329, 333, 336, 413, 415, 421, 424.)

The ALJ also stated that Dr. Sachs's treatment notes after January 2009 – related to Plaintiff's gait and pain associated therewith – are inconsistent with Dr. Sachs's opinions.  The ALJ's statement in this regard is not only vague and conclusory, but also inaccurate.  Dr. Sachs's treating notes after Plaintiff's alleged onset date and during Plaintiff's alleged disability period (December 22, 2008 through March 31, 2009), consistently reveal abnormal gait and pain behaviors.

---

[4] "Intractable pain" has been described as a severe, constant pain that is not curable by any known means and is not relieved by ordinary medical, surgical, nursing or pharmaceutical measures.  https://en.wikipedia.org/wiki/Intractable_pain.  The State of Florida defines it as "pain for which, in the generally accepted course of medical practice, the cause cannot be removed and otherwise treated."  F.S.A. § 458.326.

(Tr. 320 ("The patient is ambulating today using a walker . . . The patient has some difficulty transitioning from sitting to standing."), 326 ("There is an antalgic gait . . . Pain behaviors such as grimacing and shifting position."), 329 (same), 333 (same), 336 (same).) Moreover, treatment notes exist after Plaintiff's alleged disability period and within twelve months of his alleged onset date that show abnormal gait and pain behaviors. (Tr. 295 ("The patient has a slow and antalgic gait and is using a straight cane for assistance . . . There is guarding of painful areas."), 300 ("The patient ambulates using a monopole cane. The gait is slow and careful."), 302 ("The patient is ambulating today using a walker. The patient has some difficulty transitioning from sitting to standing."), 305 (same), 318 (same).) The ALJ apparently focused on a set of treatment notes after Plaintiff's two hip replacement surgeries that did not report "antalgic gait and pain behaviors such as grimacing and shifting position." (Tr. 665.) However, while the notes referenced by the ALJ do not use those precise terms, the ALJ failed to explain how the notes, as drafted, are inconsistent with the opinions or restrictions provided by Dr. Sachs.[5] (*See, e.g.,* Tr. 217, 219, 223, 225, 228, 233, 239, 241, 244, 255, 258, 264, 267, 270, 274, 276, 278, 280, 283, 285, 287, 293 (indicating that Plaintiff's gait "is slow and careful" and that Plaintiff's "posture is abnormal.").)

With respect to the ALJ's statements that Dr. Sachs's notes failed to

---

[5] Throughout Dr. Sachs's treatment of Plaintiff, he diagnosed her with chronic intractable pain, prescribed various strong narcotic medications, and performed trigger point injections.

12

indicate certain testing of limitations, the ALJ again failed to explain how the notes, as drafted, contradict Dr. Sachs's opinions. As discussed above, there is no indication that Dr. Sachs had any reason to render an opinion or give Plaintiff restrictions prior to when he did. Further, Dr. Sachs explained the basis for his opinions in the RFCQ. (Tr. 635.)

Similarly, the ALJ failed to explain how Plaintiff's mark in a patient questionnaire that she could lift an unknown three-year old child "often" and walk one quarter of a mile "sometimes" contradicts Dr. Sachs's opinions. Plaintiff also marked in that same questionnaire that she can "never" mow the lawn and that her pain "sometimes" keeps her from leaving the house (Tr. 346), and marked in another questionnaire that pain prevents her from sleeping and that she can "never" stand in line more than 20 minutes (Tr. 1214); yet, the ALJ omitted those notations from the discussion. The ALJ then surmised that Plaintiff should not have completed physical therapy in September 2009; however, without further discussion, such surmising is insufficient to discount the opinions of Dr. Sachs.

The ALJ also found Dr. Sachs's opinions to be "unaccompanied by any rationale explaining the basis for the assessed limitations," but Dr. Sachs provided his rationale for the basis of the assessed limitations in the RFCQ. (Tr. 635.) The ALJ then substituted his lay opinion for that of a medical professional and concluded that "the amount of pain medication that Dr. Sachs continued to prescribe after the claimant's hip surgeries appeared to be excessive in light of

13

the absence of objective abnormalities after the surgery."[6]  *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (holding that an ALJ may not substitute his opinion for that of a doctor).

It is important to note that many of the reasons cited by the ALJ to discount Dr. Sachs's opinions would apply equally to Dr. Junejo, the state agency medical consultant of whose opinions the ALJ afforded "significant weight." (Tr. 664.) Dr. Junejo, who did not examine Plaintiff, merely stated that he "reviewed evidence and agree[d] with [the RFC assessment completed by the Single Decision Maker who is not a doctor]." (Tr. 447.) Dr. Junejo provided no rationale explaining the basis of his assessed limitations, gave no indication of testing Plaintiff's limitations, and provided no reference to records indicating a lack of pain.

Moreover, Dr. Sachs's opinions appear to be consistent with other doctors of record, but the ALJ refrained from discussing Dr. Sachs's opinions in relation to such doctors. For example, Dr. Esquivia-Munoz reported on December 29, 2008 that Plaintiff had constant pain in both hips and had difficulty ambulating. (Tr. 427.) He opined that her prognosis was fair, her activity was limited and her disability was "partial, permanent." (*Id.*) On January 19, 2009, Philip Hardy, M.D. noted that Plaintiff's gait was "[m]arkedly antalgic," and that her neck and hip examinations revealed discomfort and pain. (Tr. 308.) On February 5, 2009,

---

[6] The statement is also vague and conclusory, and does not cite to record evidence.

David Doward, M.D., noted that "[a]ctivity makes Plaintiff's symptoms worse. Rest improves her pain." (Tr. 310.) On April 9, 2009, Dr. Hardy opined that Plaintiff "remains on temporary total disability." (Tr. 317.) In June and July 2010, Dr. Doward noted that Plaintiff experienced "[p]ain with range of motion of the cervical spine." (Tr. 252, 1075.)

### III. Conclusion

For the forgoing reasons, the Court concludes that the ALJ improperly evaluated the opinions of Dr. Sachs. Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence. This issue is dispositive and, therefore, it is unnecessary for the Court to address Plaintiff's other argument. *See, e.g., Alexander v. Comm'r of Soc. Sec.*, No. 8:13-cv-1602-T-GJK, 2014 WL 4211311, at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)).

Accordingly, it is hereby **ORDERED**:

1. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner, with instructions for the ALJ to: (a) reevaluate the medical opinions of Dr. Sachs and explain what weight is being accorded to those opinions, and the reasons therefor; (b) reconsider the RFC assessment, if necessary, and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order, and close the file.

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on September 19, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record